IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREA BLEA,

        Plaintiff,

vs.                                    No. CIV 00-680 LFG/LCS

D.W.B.H., INC. d/b/a SANTA FE
MITSUBISHI/HYUNDAI, a New Mexico
Corporation, and J.D. PARKER, ARLEN SMITH,
JIM BEWLEY, SONNY SANCHEZ and
SUSAN M. JOHNSON, individually and as
supervisors of D.W.B.H., INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant J.D. Parker's ("Parker") Motion to Dismiss [Doc. 22], and the Motion to Dismiss [Doc. 26] of Defendants D.W.B.H., Inc. ("DWBH"), and individual Defendants Jim Bewley ("Bewley"), Arlen Smith ("Smith"), Susan Johnson ("Johnson"), and Sonny Sanchez ("Sanchez"), all of whom were employed by Santa Fe Mitsubishi/Hyundai ("SFMH") at all times pertinent hereto.

Plaintiff Andrea Blea ("Blea") alleges she was the victim of gender discrimination and sexual harassment while employed at SFMH as an automobile salesperson for two to three months in 1998-99. She brought this action against all Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New Mexico Human Rights Act ("NMHRA"), N.M.S.A. (1978) § 28-1-1 *et seq.,* alleging employment discrimination and retaliatory discharge. Blea alleges additional

state law claims against all Defendants for intentional infliction of emotional distress, against Defendant Parker for assault and battery, and against DWBH for wrongful termination, breach of contract, breach of implied covenant of good faith and fair dealing, and negligent supervision and retention.

Pursuant to a stipulation of partial dismissal, the Title VII claims against the individual Defendants were dismissed on June 6, 2000. Parker now seeks dismissal of all remaining causes of action against him, including those under the NMHRA, the claim for intentional infliction of emotional distress, and the count for assault and battery. DWBH and the remaining individual Defendants filed a separate motion to dismiss, adopting Parker's arguments on all issues except assault and battery, which does not apply to them.

Although Defendants move for dismissal rather than summary judgment, both they and Plaintiff presented, and rely on, a great deal of information outside the pleadings. Under Fed. R. Civ. P. 12(b)(6), a district court has broad discretion to consider materials outside of the pleadings, and if the court chooses to consider such material, it must treat a motion to dismiss as a motion for summary judgment. Lowe v. Town of Fairland, 143 F.3d 1378, 1381 (10th Cir. 1998). Judge Smith allowed the parties to file a surreply and a response thereto, and each of these pleadings includes material outside the pleadings. Because the parties have been given and have availed themselves of the opportunity to present this material outside the pleadings, and because the Court will consider this material, these motions will therefore be treated as ones for summary judgment. Id.

## Claims Under the NMHRA

A. Against the Individual Defendants

The Court has supplemental jurisdiction over Blea's state law claims under NMHRA pursuant

2

to 28 U.S.C. § 1367(a).  The NMHRA was enacted to eliminate unlawful discriminatory practices, "and to create a comprehensive administrative scheme to facilitate adjudication of claims of discrimination."  Gandy v. Wal-Mart Stores, Inc., 117 N.M. 441, 442, 872 P.2d 859, 860 (1994). Much like the detailed administrative process under Title VII, the NMHRA is intended to promote conflict resolution through conciliation rather than litigation. *See, e.g.*, Trujillo v. Colorado, 649 F.2d 823, 826 (10th Cir. 1981) (cooperation and voluntary compliance preferred means of eliminating discriminatory practices); *see also,* Toledo v. Nobel-Sysco, Inc., 892 F.2d 1481, 1487 (10th Cir. 1989) ("Title VII strongly encourages cooperative settlements as the primary means for resolving claims of discrimination").

Indeed, the New Mexico legislature enacted a comprehensive administrative process intended to achieve this goal.  A plaintiff seeking to bring suit under NMHRA must first exhaust the administrative remedies provided in the Act.  Mitchell-Carr v. McLendon, 127 N.M. 282, 287, 980 P.2d 65, 70 (1999).  The administrative procedure established in the Act requires that the claimant file a written complaint with the state Human Rights Division ("HRD") which "shall state the name and address of the person alleged to have engaged in the discriminatory practice, all information relating to the discriminatory practice and any other information that may be required by the [human rights] commission." N.M.S.A. (1978) § 28-1-10(A).  The director of the HRD is charged with investigating any such complaint.  He may either dismiss it or, if he determines that probable cause exists for the complaint, "he shall attempt to achieve a satisfactory adjustment of the complaint through persuasion and conciliation."  §§ 28-1-10 (B),(C).  If conciliation fails, the Human Rights Commission issues a complaint, requiring the respondent to answer the allegations of the complaint at a hearing before the commission or a hearing officer.  § 28-1-10(F).

The respondent may appear at the hearing, give testimony and be represented by counsel; the complaining party is required to be present at the hearing and may also be represented by counsel. § 28-1-11(A). The statute provides that "[t]he complainant or his representative shall present to the commission or the hearing officer the case supporting the complaint." § 28-1-11(C).

At the conclusion of the hearing, the hearing officer prepares a written report, setting forth proposed findings of fact and conclusions of law, which is forwarded to the commission. § 28-1-11(E). The commission then issues its order. If the complainant prevails, the commission may award actual damages and attorneys' fees; if respondent prevails, the complaint will be dismissed. § 28-1-11(F). A prevailing complainant may secure court enforcement of the commission's order, § 28-1-12, and either party feeling aggrieved by the commission's order may proceed to district court for a trial de novo. § 28-1-13(A).

Blea left her employment with SFMH on February 2, 1999. On April 26, 1999, she filed a complaint with the HRD pursuant to NMHRA's administrative procedures. The complaint form (Included in Ex. 2 to Complaint) includes a block wherein the complainant is to list "the employer . . . who discriminated against me." Blea listed only Santa Fe Mitsubishi/Hyundai in this block; she did not name any individual Defendant. In an affidavit attached to her administrative complaint, Blea identified Defendants Parker, Smith, Bewley, and Johnson (incorrectly identified as "Susan Wottey"), and described certain allegedly discriminatory actions taken by these Defendants.

On August 30, 1999, the HRD issued its Determination of Probable Cause (included in Ex. 2 to Complaint). This document notes Blea's complaints that she was subjected to sexual harassment by "one of the General Sales Managers," who touched her on the thigh and made comments about her legs; it also states that this General Sales Manager voluntarily quit employment with respondent on

4

February 15, 1999.  The Determination of Probable Cause is directed to "the respondent," *i.e.*, SFMH, and does not name the General Sales Manager or any other individual respondent.  The Determination requests that the parties "explore conciliation," with a formal hearing to be convened in the event conciliation fails.

Conciliation apparently failed, as a hearing was scheduled for March 1, 2000.  SFMH appeared at the hearing through its representative Bewley, and attorneys; Blea also appeared and was also accompanied by her attorneys.  No evidence or testimony was presented at the hearing; in its Order Dismissing Complaint, the commission noted:

> Complainant, through her attorney, declined to present evidence in support of her case at the hearing, as required by NMSA 1978, Section 28-1-11(C), of the New Mexico Human Rights Act.  The Commission, being fully advised in the premises, finds that the complaint should be dismissed for failure to present supporting evidence.

(Order Dismissing Complaint, included in Ex. 2 to Complaint).  The administrative complaint was dismissed with prejudice.   In the Order Dismissing Complaint, "respondent" is identified as "D.W.B.H., Inc., d.b.a. Santa Fe Mitsubishi/Hyundai"; no other respondents are noted.

New Mexico strictly interprets the administrative procedure requirements of the NMHRA. Luboyeski v. Hill, 117 N.M. 380, 872 P.2d 353 (1994).  As did Blea, the complainant in Luboyeski alleged that a co-worker touched and made advances toward her in inappropriate ways and that supervisors failed to take action in response to her complaints.  Luboyeski named the Santa Fe Public School System as respondent in her administrative claim.  There, as here, when the plaintiff later brought suit against the School System, she named as defendants the offending co-worker and supervisors, as well.  The New Mexico Supreme Court upheld dismissal of the plaintiff's claims against individual defendants on grounds they had not been named in the administrative complaint:

> The individual defendants were not named as respondents in the proceeding before the Division and were only added as defendants on Luboyeski's appeal to the district court . . . [therefore,] Luboyeski has not exhausted her administrative remedies with regard to the individual defendants . . . [I]ndividual defendants cannot be sued in district court under the Human Rights Act unless and until the complainant exhausts her administrative remedies against them . . . [C]ompliance with the grievance procedure in the Human Rights Act is a prerequisite to suit in district court under the Act . . .  Since Luboyeski has not gone through the administrative process that is prerequisite to suing the individual defendants under the Human Rights Act, we affirm the trial court's order dismissing those defendants.

Luboyeski, 117 N.M. at 382-83.

See also, Tafoya v. Bobroff, 865 F. Supp. 742, 747-48 (D.N.M. 1994), aff'd, 74 F.3d 1250 (Table, text in Westlaw), No. 94-2246, 1996 WL 15524 (10th Cir. Jan. 16, 1996) ("The New Mexico Supreme Court recently and unequivocally held that a plaintiff under the New Mexico Human Rights Act must exhaust his or her administrative remedies against each defendant before he or she may sue in the defendant in court," citing Luboyeski); Sabella v. Manor Care, Inc.,121 N.M. 596, 598, 915 P.2d 901, 903 (1996) ("Luboyeski requires full compliance with NMHRA grievance procedures as a prerequisite to filing a claim in district court" under the Act); and Mitchell-Carr, 127 N.M. at 286 ("None of the Appellants named McLendon as an individual respondent in these charges; each named only the Union as a respondent.  Therefore, we conclude that the district court proper[l]y granted summary judgment on Appellants' NMHRA claims against McLendon").

To counter the thrust of Luboyeski and its progeny, Blea argues that she was prevented from listing the individuals' names on the administrative claim form by HRD policy and therefore should not be held responsible for omission of these names.  She further asserts that the individual Defendants had actual notice of the claim, either because they are "high-ranking officials" with DWBH and

participated in the investigation of Blea's administrative claim, or else because all them except Sanchez were mentioned in the affidavit attached to Blea's claim.  The Court rejects both of these arguments.

As noted above, the parties presented to the Court several pieces of evidence outside the pleadings, and the present motions to dismiss are treated as ones for summary judgment.  Blea appends, as an exhibit to her response memorandum, the Affidavit of Richard A. Galaz, director and chief executive officer of the New Mexico Human Rights Division.  Mr. Galaz states in the affidavit that the HRD changed its policy on or about March 15, 2000, to allow inclusion of named individual respondents on the face of HRD Charge Forms.  Prior to that time, he says, HRD policy was to include only the name of the employer organization on the face of the form, in keeping with its work-sharing agreement with EEOC.  He states further that, because of this explicit policy, a person filing a claim between 1997 and March 2000 would not have been able to include named individuals on the face of the Charge Form.

Defendant argues it is irrelevant that Blea was prevented from naming individuals in her administrative claim, because she did not make any attempt to do so until February 17, 2000. (Declaration of Shari L. Sterud, Ex. 1 to Defendants' reply memorandum, and Ex. A thereto).  The Court finds this argument persuasive.  The "Complainant's Amendment of H.R.D. Charge" in which Blea seeks to amend her initial claim to add Parker, Smith, Bewley, and Johnson as respondents, was filed almost ten months after the original claim.  This was well after the 180-day period for filing a claim; indeed, it was filed shortly before the date of the administrative hearing, which was set for March 1, 2000.

The purpose of the statutory claims procedure is to give the administrative agency an opportunity to investigate and possibly settle the claim, before the parties must assume the burden and

expense of litigation.  *See*, Gandy, 117 N.M. at 444:  "Exhaustion applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course," *quoting from* United States v. Western Pac. R.R., 352 U.S. 59, 63-64, 77 S. Ct. 161, 165 (1956). *See also*, Bullard v. Lockheed Engineering & Sciences Co., No. 93-830 HB/JHG, 1994 WL 761690 (D. N. M. Feb. 28, 1994).

In light of Luboyeski and cases coming after it, the parties to this claim were, or should have been, aware that individuals unnamed in the administrative claim form would not be proper parties to any suit arising from this claim, and therefore the potential liability of these unnamed individuals could not be factored into the conciliation process.  The fact that some or all of the individuals had notice of Blea's claim against DWBH, knew that their actions were the basis for her claims, and/or were involved in the investigation and conciliation process as witnesses, does not alter the fact that they were not respondents in the administrative proceedings and thus were not prospective defendants in any litigation which might arise therefrom.  The time for naming them had expired and the conciliation process had already ended, unsuccessfully, before Blea even attempted to add individual names to her claim.

Although Blea argues that she was prevented from naming these individuals, she nevertheless amended her claim to do just that in February 2000.  She does not explain why she could not have filed such an amendment, either at the time she first submitted her administrative claim, or at any time within the statutory 180-day period.  Blea attaches an affidavit (Ex. B) to her surreply, in which she states, "It is true I did not officially attempt to amend my Human Rights Division Charge to include individual respondents until February 17, 2000.  Nevertheless, I am not an attorney and do not think in terms of individual respondents, or indeed individual or corporate entities, when I do anything."

She also states that, when she filed her charge, she was unaccompanied by an attorney "and did not really consider who or what I was specifically filing charges against."  She says the reason SFMH "ended up on the Respondent's block" of the Charge Form was because she gave that name to the person interviewing her, who asked for the name of her employer.

Blea may have been unaccompanied by counsel when she filled out the Charge Form on April 26, 1999, but she was not without legal advice.  The record shows that she was either represented by counsel on the day the claim was submitted, or else she retained counsel that day or the next.  The record includes a letter dated April 27, 1999 from her attorney to Richard Galaz of HRD, stating:

> My office represents Andrea Blea in her claim against Santa Fe Mitsubishi/Hyundai for sexual harassment. We are assisting her through the HRD process and will represent her in a possible suit against Santa Fe Mitsubishi/Hyundai based on her claim.

(Ex. A to Defendant's Response to Surreply).  Luboyeski was the law in New Mexico at the time Blea filed her claim, and even if Blea herself "did not think in terms of individual respondents," her attorney is charged with knowledge of New Mexico law and requirements to bring claims against the individuals.

Blea characterizes Luboyeski and Mitchell-Carr as "pre-existing precedent which was predicated on a misapprehension by the [New Mexico Supreme] Court."  This Court declines to adopt Blea's chastisement of New Mexico's highest court.  State law must be applied in state law claims brought into federal court pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(a).  Although Luboyeski was decided in 1994, prior to institution of the HRD policy disallowing inclusion of individual respondents on Charge Forms (see Galaz affidavit, Ex. A to Plaintiff's Response Memorandum), Luboyeski was confirmed by the state supreme court in 1999, two years after

9

institution of the policy.  Mitchell-Carr, *supra*.  Thus, the principle that individual respondents who are unnamed in the administrative claim cannot become defendants in later litigation under NMHRA cannot be characterized as "pre-existing precedent which was predicated on a misapprehension by the Court."

Even if it were, Mitchell-Carr and Luboyeski are the law of New Mexico and are based on the sound policy that claims arising under the Act can best be handled through the "efficient, sensible, and comprehensive scheme for remedying violations of [human] rights" (Gandy, 117 N.M. at 443), set up by the administrative procedures of the NMHRA in an effort to avoid unnecessarily invoking the machinery of the judicial system.  *See also*, Trujillo v. Colorado and Toledo v. Nobel-Sysco, Inc., cited *supra*.  New Mexico's comprehensive administrative scheme cannot function effectively unless all concerned are fully aware of the potential liability of each party, both in the administrative process and eventually in court, if the matter should proceed that far.

Because they were not named in Blea's administrative claim before the HRD, the individual Defendants are not properly before this Court in connection with her causes of action under NMHRA, and the claims under that statute will be dismissed.

### B.  Against Defendant DWBH

DWBH was named as the respondent in Blea's administrative claim and thus cannot take advantage of the argument discussed above.  However, DWBH argues that Blea nevertheless failed to exhaust her administrative remedies under the NMHRA, because she declined to present evidence at the § 28-1-11 hearing and her claim was, consequently, dismissed.

Blea was issued a Determination of Probable Cause on August 30, 1999 (included in Ex. 2 to Complaint).  Conciliation efforts were undertaken in October 1999 (¶ 1 of Complainant's Amendment

of H.R.D. Charge, Ex. A. to Ex. 1 to Defendant's reply memorandum), and a hearing was scheduled for March 1, 2000.  As noted above, Blea appeared at the hearing accompanied by her attorneys, and "through her attorney, declined to present evidence in support of her case at the hearing, as required by NMSA 28-1-11(C)."  (Order Dismissing Complaint, included in Ex. 2 to Complaint).  Her administrative complaint was dismissed by the commission, with prejudice.

Blea does not dispute that she failed to present any evidence at the administrative hearing.  She gives no explanation for this failure.  She argues, however, that "such presentation is [not] necessary for continuing to litigation proper."  The Court disagrees.  "Once a person has elected to proceed with his or her complaint under state law, the NMHRA controls the grievance procedures for resolving that complaint."  Mitchell-Carr, 127 N.M. at 287.  New Mexico law "requires full compliance with NMHRA grievance procedures as a prerequisite to filing a claim in district court" under the Act.  Sabella, 121 N.M. at 598.

> [C]ompliance with the grievance procedure in the Human Rights Act is a prerequisite to suit in district court under the Act: 'The comprehensive nature of the Act supports the conclusion that the legislature intended that the grievance procedure is mandatory when unlawful discriminatory practices are alleged.'

Luboyeski, 117 N.M. at 382.

Having invoked the administrative procedures of the NMHRA, Blea was obligated to follow through with those procedures if she wished to pursue litigation under the Act.  As noted above, the purpose of the administrative claim provisions of the NMHRA is to establish a speedy and inexpensive method for resolving human rights claims, with resort to the courts available only after the agency has had a fair opportunity to resolve the dispute.  Unless the complainant participates in the process and presents whatever evidence she has in support of her claim, she cannot be said to have exhausted her

11

remedies.

The language of the Act is mandatory.  The NMHRA required that the complainant "shall be present at the hearing and may be represented by counsel," N.M.S.A. (1978) § 28-1-11(A), and that "[t]he complainant or his representative shall present to the commission or the hearing officer the case supporting the complaint."  N.M.S.A. (1978) § 28-1-11(C).  Similarly, regulations of the Human Rights Division provide that the complainant shall be present at the hearing and she or her representative "shall present the case supporting the complaint at the hearing."  9 N.M.A.C. 1.1.12.3.1(a).  The regulations further provide that the complainant has the burden of proof and must prove her case by a preponderance of the evidence, 9 N.M.A.C. 1.1.12.3.6 (a),(b), and that failure of the complainant to appear and present her case at the hearing could result in dismissal of her administrative claim, which is what occurred in this case.  9 N.M.A.C. 1.1.12.3.1(b).

In addition, the hearing officer is directed to prepare a written report setting forth proposed findings of fact and conclusions of law, and to recommend action to be taken by the commission. N.M.S.A. (1978) § 28-1-11(E); 9 N.M.A.C. 1.1.13.3 (2000).  This process cannot function as contemplated in the statute and regulations if the complaining party fails to present the case supporting her complaint, as she is required to do.

A complainant cannot be said to have "exhausted" her remedies when she declines to present her case at a hearing called for that purpose, and at which she has the burden of proof.  Because full compliance with NMHRA grievance procedures is a prerequisite to filing a claim in district court under the Act, Sabella, 121 N.M. at 598, the Court will dismiss the NMHRA claims against DWBH and all individual Defendants.

## Claim Against Parker for Assault and Battery

In her Tenth Cause of Action, Blea asserts a claim against Defendant Parker for assault and battery, alleging Parker repeatedly made explicit sexual requests of her, touched her leg on at least one occasion, and told her she would need his support to get promoted in the company. Parker contends that the exclusivity provisions of the New Mexico Workers' Compensation Act bar Blea's common law claim for assault and battery. Until fairly recently, Parker's exclusivity argument had merit.

Certain sections of the Workers' Compensation Act ("WCA") provide that the remedy established by the Act is exclusive in the sense that an employer who has complied with the provisions of the Act, and his management and supervisory employees, shall not be liable for personal injury to any employee except as provided in the Act. N.M.S.A. (1978) §§ 52-1-6(E), 52-1-8, 52-1-9.

It is true, as Parker points out, that New Mexico courts hold that the exclusivity provisions of the WCA bar an employee from bringing a tort action against a co-employee, even for an intentional tort such as battery. Gallegos v. Chastain, 95 N.M. 551, 624 P.2d 60 (Ct. App. 1981). However, the WCA requires, as conditions of coverage under the Act: (1) that the employer must have complied with the provisions of the Act regarding insurance; (2) that at the time of the accident, the employee was providing services arising out of and in the course of his employment; and (3) that the injury must be "proximately caused by accident arising out of and in the course of [claimant's] employment," N.M.S.A. (1978) § 52-1-9.

"[T]he absence of any one of these elements destroys recovery under the WCA and removes any existing cause of action from its exclusivity provisions." Coleman v. Eddy Potash, Inc., 120 N.M. 645, 652, 905 P.2d 185, 192 (1995). Recently, the New Mexico Supreme Court held that "injuries caused by sexual harassment do not arise out of employment," such injures are therefore excluded

from coverage under the WCA. <u>Coates v. Wal-Mart Stores, Inc.</u>, 127 N.M. 47, 54, 976 P.2d 999,

1006 (1999). *See also* <u>Sabella</u>, *supra,* 121 N.M. at 599 (WCA does not bar a claim under the

NMHRA for sexual harassment, because such a claim "does not fall within the coverage formula of

the WCA").

Plaintiffs in <u>Coates</u> alleged a continuing patten of physical and verbal sexual harassment by a

co-employee, and they brought common law claims against both Wal-Mart and the co-employee. Wal-

Mart moved for summary judgment, arguing that the WCA exclusivity provision barred the common

law claims; this motion was denied, and the case proceeded to trial. There is no indication whether

the individual defendant joined in this motion, and plaintiffs settled with the individual co-worker prior

to trial, so the only issue before the Supreme Court was the liability of the employer.

In deciding <u>Coates</u>, the supreme court relied on <u>Cox v. Chino Mines / Phelps Dodge</u>, 115 N.M.

335, 850 P.2d 1038 (Ct. App. 1993), in which the court of appeals held that sexual harassment does

not "arise out" of employment so as to be compensable under the WCA. The <u>Cox</u> court stated that

"the way to maintain public policies against sexual harassment on the job is to pursue the common-law

or statutory remedies available to promote these polices and not to engraft those policies onto a very

different legislative scheme such as the Workers' Compensation Act." <u>Cox</u>, 115 N.M. at 338-39. The

New Mexico Supreme Court found this reasoning persuasive in coming to the conclusion that an

employer could be sued in tort for the sexual harassment of one employee by another, in spite of the

WCA exclusivity provisions:

> the WCA will preclude other claims only if the injury falls within the
> scope of the WCA . . .   A claim falls outside the WCA for work-
> related injuries if . . . the injuries do not arise out of employment . . .
> Injuries caused by sexual harassment do not arise out of employment
> . . .   Accordingly, Appellees' claims are not compensable under the

> WCA . . .   [A]s a matter of public policy, sexual harassment should
> and cannot be recognized as a 'risk' inherent in any work environment
> . . .   The WCA only covers accidental injuries that occur in the
> workplace . . .   This Court will not adopt a rationale that would
> categorize sexual harassment as an accident.

Coates, 127 N.M. at 52-53.

The New Mexico Supreme Court's rationale regarding sexual harassment on the job, as articulated in Coates, is persuasive and trumps the New Mexico Court of Appeals' rationale in Gallegos. Although the ruling in Coates did not apply to a co-worker but rather to the employer, it is apparent from the reasoning, and the strong language employed, that the supreme court would apply the same rule to a cause of action brought against the offending co-employee. The language is unequivocal: "we hold that the WCA's exclusivity provision does not preclude an employee from seeking a remedy outside the WCA for injuries caused by sexual harassment." Coates, 127 N.M. at 53.

It is thus apparent that the New Mexico courts would consider that Blea's sexual harassment injuries, including the alleged assault and battery by Parker, were not caused by an accident arising out of her employment, and the WCA is therefore not available to her as a remedy and cannot preclude her common law claim. The Court finds that Blea's common law cause of action against Parker for assault and battery is not barred by the exclusivity provision of the WCA, and Parker's motion to dismiss Count Ten of the complaint is therefore denied.

## Claim for Intentional Infliction of Emotional Distress

Parker and the other Defendants argue that Blea's claim for intentional infliction of emotional distress must be dismissed, because it is barred by the exclusivity provisions of the WCA, and because the conduct she alleges is insufficiently extreme and outrageous to support this cause of action. The

15

Court rejects both assertions.

Blea's claims for intentional infliction of emotional distress arise from the acts sexual harassment alleged in her complaint, and from the retaliatory discharge she allegedly suffered as a result of her complaining about sexual harassment.  The claim for intentional infliction of emotional distress against all Defendants is, thus, grounded in sexual harassment and therefore cannot be precluded by the WCA, for the reasons noted above.  Coates, 127 N.M. at 52-53.  The cases cited by Defendants which hold otherwise were decided prior to the supreme court's holding in Coates, and the Court therefore finds them inapplicable.  The Court also finds that Blea has stated a claim for intentional infliction of emotional distress, and has supplied sufficient evidence to survive summary judgment on this cause of action.

In order to recover under a cause of action for intentional infliction of emotional distress under New Mexico law, the plaintiff must show that the tortfeasor's conduct was extreme and outrageous under the circumstances, that the tortfeasor acted intentionally or recklessly, and that as a result of the conduct the claimant experienced severe emotional distress.  Coates, 127 N.M. at 57. It has been held that liability arises only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.  Dominguez v. Stone, 97 N.M. 211, 214, 638 P.2d 423, 427 (Ct. App. 1981).  Andrews v. Stallings, 119 N.M. 478, 491, 892 P.2d 611, 624  (Ct. App. 1995).  Mere insults do not exceed the bounds of decency.  Andrews, 119 N.M. at 491.

The emotional distress suffered by the plaintiff must have been reasonable and justified in under the circumstances; there is no liability where the plaintiff suffered exaggerated and unreasonable distress, unless it results from a peculiar susceptibility of which the actor had knowledge.  Dominguez,

97 N.M. at 215. "By 'severe' we intend that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'" <u>Jaynes v. Strong-Thorne Mortuary, Inc.</u>, 124 N.M. 613, 618, 954 P.2d 45, 50 (1997).

In support of her claim for intentional infliction of emotional distress, Blea cites "outrageous conduct" on the part of Defendants and describes the following acts of *quid pro quo* and hostile environment sexual harassment:

The sales floor of the SFMH workplace was characterized by "continual offensive jokes and horseplay of a sexual nature." Conversations regarding intimate sexual topics took place daily on the sales floor among male salespersons, in Blea's presence. Blea states that she did not take part in these conversations, which often included Defendant Smith, the dealership manager; however, she found it difficult to avoid hearing the comments, as the practice was "widespread," "open and notorious."

Defendant Sanchez knew Blea was married but nevertheless invited her for drinks after work, invited her to come to his house and use his hot tub, said that she could borrow a bikini swimsuit, told her that her husband wouldn't mind because he was busy at the Police Academy, called her and another female employee "twin butts" and, in Blea's presence, discussed intimate details of his sexual activity with other women. Defendant Parker asked Blea if she wore a "thong," made requests of a sexual nature to Blea, commented on her legs, and put his hand on her leg on at least one occasion. Parker "made it known" that if she complained about his behavior to his supervisor, he would have her fired. After Blea objected to Parker's behavior, he began to criticize her job performance, failed to train her for a promised promotion, and assigned her to less attractive sales prospects than other salespersons.

Blea complained to management about the hostile environment and tendered her resignation

in a letter to Smith and Bewley.  She was interviewed by Smith and Johnson, and in response to this resignation letter, DWBH offered to move Blea to another location in lieu of resignation.  She conditionally accepted that offer pending DWBH's investigation of the matter, but after the investigation was completed, Blea was terminated from her employment without explanation.  She attempted to contact Bewley, Smith, and Johnson about the termination, but none of them would accept or return her phone calls.

In addition to the behavior described above, Blea alleges that Defendants failed to protect her from the continuing sexual harassment and other offensive conduct, and retaliated against her for reporting these conditions by terminating her employment.  She further alleges that as a result of Defendants' actions, she has suffered "extreme and severe mental anguish and emotional distress," has incurred medical expenses for treatment by psychotherapists and other medical providers, and has suffered lost earnings and employment opportunities.  Blea's allegations are sufficient to state a cause of action, and to get to the jury, on the issue of intentional infliction of emotional distress as it has been defined and interpreted by New Mexico courts.

The plaintiff in <u>Phifer v. Herbert</u>, 115 N.M. 135, 848 P.2d 5 (Ct. App. 1993), *overruled on other grounds*, <u>Spectron Dev. Lab. v. Am. Hollow Boring Co.</u>, 123 N.M. 170, 936 P.2d 852 (Ct. App. 1997), was employed by an automobile dealership for approximately four months.  She alleges that the acting sales manager made explicit and implied sexual remarks and made improper overtures toward her which embarrassed, shamed, degraded her, and caused her mental anguish to the extent that she was forced to quit her job at the dealership.  The court found these allegations, which are very similar to those in the present case, sufficient to state a claim for intentional infliction of emotional distress.  The court noted, however, that it still remained for plaintiff to prove her case.

18

In Coates v. Wal-Mart Stores, Inc., *supra*, another sexual harassment case, the New Mexico Supreme Court upheld a jury verdict awarding damages for intentional infliction of emotional distress. Plaintiffs in that case produced evidence that a supervisor at the store where all were employed physically and verbally sexually harassed them on several occasions over a one-year period, that the store's management took no action when plaintiffs repeatedly complained about the harassment, and that plaintiffs were forced to quit their jobs as a result.

The plaintiffs in Coates presented evidence that the following incidents occurred and were either reported to management or witnessed by management officials, who on some occasions "watched and laughed": the supervisor, Alire, made lewd and vulgar suggestions to Plaintiff Duran, approached Duran while she was on a forklift and grabbed her breasts from behind, pulled open Plaintiff Martinez's blouse to look at her breasts, and made obscene gestures to Plaintiff Coates which made her scream.  In spite of these incidents, Wal-Mart management assigned Alire to directly supervise Duran and told her that if she objected, her only alternative was to quit.  Alire was also transferred to a different department after Coates and Martinez reported his sexually harassing behavior, but he was not otherwise disciplined and was later transferred to a department immediately adjacent to Coates' workstation, where he continued to threaten her.

Plaintiffs settled their claims against the supervisor, and the case went to trial against the employer.  The jury awarded plaintiffs compensatory and punitive damages, which were upheld by the supreme court, which held:

> Substantial evidence exists in the record to support the jury's decision that Wal-Mart intentionally inflicted severe emotional distress on the Appellees and that Wal-Mart's misconduct merits an award of punitive damages . . .  In this case, it was not only Alire's [the supervisor's] conduct but also the conduct of several of Wal-Mart's managers which

caused the Appellees' emotional distress . . . Alire's conduct was outrageous, and apparently Wal-Mart was aware of this since Alire's conduct was witnessed by high level supervisory personnel.  Under these circumstances, a reasonable fact-finder could conclude that Wal-Mart intentionally allowed the harassment to continue with 'utter indifference to the consequences.'

Coates, 127 N.M. at 57.

When abusive conduct occurs in a workplace, where the offender is "in a position of authority over" the victim, who "is not free to leave but must remain in physical proximity" to the offending persons, "it is for the jury to determine whether this is a factor in making the claim one of extreme outrage and the extent to which the employer was or should have been aware of these conditions through its supervisory personnel or other means."  Dominguez, 97 N.M. at 215.

Blea's circumstances, as alleged in her complaint and presented in the materials included in her briefing on these motions, is sufficiently similar to those of plaintiffs in Phifer and Coates and Dominguez that the Court finds she should be allowed to present her claim of intentional infliction of emotional distress to a jury.  Blea asserts that she was continually subjected, against her will, to sexual remarks and comments about her anatomy and to conversations detailing intimate aspects of co-workers' sex lives, was invited on dates by co-workers who knew she was married, was asked by her supervisor about her underwear, told she had beautiful legs and was touched on the legs by the supervisor who also implied that he could influence her career with the company and impliedly threatened to have her fired if she complained about his conduct, and was terminated when she did complain.  She alleges that as a result of Defendants' actions, she has suffered severe mental anguish and emotional distress.  "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence it has in fact existed."

20

Dominguez, 97 N.M. at 215.

Defendants point to several opinions from this District where the court has dismissed claims of intentional infliction of emotional distress in cases involving even highly offensive behavior, because the allegations failed to rise to the level of extreme and outrageous conduct.  While the Court acknowledges these decisions and recognizes that Blea faces a heavy burden in convincing a jury that Defendant behaved in ways which are beyond all possible bounds of decency and utterly intolerable in a civilized society, it finds her allegations sufficient, under New Mexico precedent, to allow her to proceed on this cause of action.  By this ruling, the Court makes no comment on the strength of Plaintiff's case; it holds only that Blea is entitled to have a jury decide whether she has made out a case of intentional infliction of emotional distress under New Mexico law.

## Order

IT IS THEREFORE ORDERED that Parker's Motion to Dismiss [Doc. 22] is GRANTED IN PART in that the Court dismisses the claims against Parker under the New Mexico Human Rights Act, but the motion is DENIED IN PART in that the Court declines to dismiss the claims against Parker for assault and battery, and for intentional infliction of emotional distress;

IT IS FURTHER ORDERED that the Motion to Dismiss [Doc. 26] by DWBH, Smith, Bewley, Sanchez, and Johnson is GRANTED IN PART in that the Court dismisses the claims against these Defendants under the New Mexico Human Rights Act, but the motion is DENIED IN PART in that the Court declines to dismiss the claim against these Defendants for intentional infliction of emotional distress.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge